**Pursuant to Ind. Appellate Rule 65(D) , this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 25 2012, 9:16 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**LORINDA MEIER YOUNGCOURT**
Chief Public Defender
Lawrence County Defender Agency

**NATHAN P. NIKIRK**
Deputy Public Defender
Bedford, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JEREMIAH L. HANCOCK,         )
          )
    Appellant-Defendant,     )
          )
      vs.           )    No. 47A01-1104-CR-201
          )
STATE OF INDIANA,       )
          )
    Appellee-Plaintiff.      )

APPEAL FROM THE LAWRENCE SUPERIOR COURT
The Honorable Michael A. Robbins, Judge
Cause No. 47D01-0811-MR-614

**January 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Jeremiah L. Hancock ("Hancock") appeals from his sentence after pleading guilty to murder.[1] Hancock raises the following restated issues for our review:

I.      Whether the trial court abused its discretion in its assessment of aggravating and mitigating circumstances; and

II.     Whether Hancock's sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The factual basis supporting Hancock's guilty plea established that on October 22, 2008, Hancock went to the house of his aunt, Diana Tabor ("Tabor"), to discuss Hancock's use of Tabor's debit card. An argument ensued about money Hancock had stolen from Tabor in order to buy drugs. During the course of the argument, Hancock stabbed Tabor eighty times with a knife. Hancock knew that stabbing Tabor could cause her death and was aware that it did cause her death.

A neighbor discovered Tabor's body in her home on October 29, 2008, approximately one week after Hancock had killed her, and called the police. Bedford police officers found Tabor's body on the floor covered in a blanket, and there appeared to be bleach surrounding her body. An autopsy report revealed that Tabor had been stabbed eighty times.

Hancock gave a voluntary statement to police in which he said that he, his girlfriend, Ashley Brown ("Brown"), and their child lived with Tabor in her house and that Tabor had allowed Hancock to use her debit card to purchase items for their baby. Hancock admitted

_____

[1] *See* Ind. Code § 35-42-1-1.

that he used the debit card to purchase junk food, a couple of bracelets, drinks, and smokes, in addition to the baby items. He stated that he had used the debit card over the course of several days making multiple withdrawals from ATM machines and that he had spent money at various establishments and to pay Brown's probation fees. Bedford police officers confirmed that nearly one thousand dollars in unauthorized charges were made from Tabor's account. At that time, Hancock denied his involvement in Tabor's death.

Officers spoke with Brown during the course of the investigation. Brown acknowledged that Tabor had given them her debit card in order to purchase items for Brown's baby. Tabor contacted Brown to inform her that the account was overdrawn. Brown stated that she and Hancock went to Tabor's house to discuss the overdraft of Tabor's account. Once inside Tabor's house, Hancock began to hit Tabor. Brown left the room, and when she returned, Tabor was lying on the floor covered with a blanket and there was blood on the chair, the wall, and on Hancock's hands. Brown told the officers that Hancock admitted to her that he had stabbed Tabor multiple times in the neck, face, and ribcage, and that he had hit Tabor's brain stem as he stabbed her. Hancock told Brown that he was proud of the fact that Tabor put up more a fight than he believed. Hancock then took Tabor's jewelry and prescription medication and removed some marijuana and clothes from the house.

The State charged Hancock with murder, theft, and possession of paraphernalia. Hancock pleaded guilty to murder on December 15, 2010, pursuant to an open sentence plea. In exchange for Hancock's guilty plea, the State agreed to dismiss the theft and possession of paraphernalia counts, as well as charges against Hancock under a separate cause number.

3

The trial court sentenced Hancock to a sixty-five year executed sentence on his conviction. Hancock now appeals. Additional facts will be supplied.

## DISCUSSION AND DECISION

### I. Abuse of Discretion in Sentencing

Trial courts are required to enter sentencing statements whenever imposing sentence for a felony offense. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). The statement must include a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence. *Id.* If the recitation includes a finding of aggravating or mitigating circumstances, then the statement must identify all significant mitigating and aggravating circumstances and explain why each circumstance has been determined to be mitigating or aggravating. *Id.* Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Id.* An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.*

A trial court may abuse its discretion by entering a sentencing statement that omits mitigating factors that are clearly supported by the record and advanced for consideration. *Id.* at 490-91. Because the trial court no longer has any obligation to "weigh" aggravating and mitigating factors against each other when imposing a sentence, a trial court cannot now be said to have abused its discretion in failing to "properly weigh" such factors. *Id.* at 491. Once the trial court has entered a sentencing statement, which may or may not include the existence of aggravating and mitigating factors, it may then "impose any sentence that is . . . authorized

4

by statute; and . . . permissible under the Constitution of the State of Indiana." Ind. Code § 35-38-1-7.1(d).

Hancock argues that the trial court abused its discretion when sentencing him by finding that Hancock had violated a position of trust when he killed his aunt and by failing to assign mitigating weight to his guilty plea.

With respect to the trial court's finding that Hancock had violated a position of trust when he killed his aunt, we note that being in a position of trust with the victim has been considered a valid aggravating circumstance in the past. *See Hampton v. State*, 719 N.E.2d 803 (Ind. 1999) (position of trust valid aggravator when sentencing former home health care provider for murder of former elderly patient). In the present case, the facts established that Tabor had greatly assisted in Hancock's upbringing. Hancock, Brown, and their child had been living with Tabor immediately preceding the date of the crime, and Tabor had provided them with financial assistance. This aggravator, the position of trust, "applies in cases where the defendant has a more than casual relationship with the victim and has abused the trust resulting from that relationship." *Rodriguez v. State*, 868 N.E.2d 551, 555 (Ind. Ct. App. 2007). Hancock considered Tabor to be a mother figure to him, yet he took advantage of their relationship when committing murder. The trial court did not abuse its discretion when finding this aggravating circumstance as it was supported by the record.

Hancock also challenges the trial court's decision to decline to find Hancock's guilty plea to be a mitigating factor for purposes of sentencing. The finding of mitigating circumstances is left to the discretion of the trial court. *Rascoe v. State*, 736 N.E.2d 246, 248-49 (Ind. 2000). "An allegation that the trial court failed to identify or find a mitigating

5

circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Id*. at 249. A trial court is not obligated to accept the defendant's arguments as to what factors constitute a mitigating circumstance. *Id*.

Our Supreme Court has held that "a defendant who pleads guilty deserves 'some' mitigating weight be given to the plea in return." *Anglemyer v. State*, 875 N.E.2d 218, 220 (Ind. 2007). The significance of a guilty plea as a mitigator varies from case to case. *Id*. at 221. "[A] guilty plea may not be significantly mitigating when it does not demonstrate the defendant's acceptance of responsibility, . . . or when the defendant receives a substantial benefit in return for the plea." *Id*.

At his sentencing hearing, Hancock argued that his guilty plea should be considered a mitigating factor. The trial court expressly declined to make that finding. In exchange for his guilty plea, two remaining charges related to this case, and all of the charges in another case pending against him, were dismissed. Substantial evidence existed to prove that Hancock murdered Tabor. Brown told police officers that she and Hancock went to Tabor's house to discuss their misuse of her debit card. An argument ensued, and Brown saw Hancock with a knife, he had previously used to cut a blunt. Brown left the room, but could hear the two continue to argue, and heard Hancock count "one" and then later "seventy-six." *Ex. Vol. I*, Exhibit A. Hancock admitted to Brown that he had repeatedly stabbed Tabor. Thus, Hancock's decision to plead guilty was pragmatic and not an expression of remorse or acceptance of responsibility. *See Wells v. State*, 836 N.E.2d 475, 480-81 (Ind. Ct. App. 2005) (no significant weight to guilty plea where decision was pragmatic one).

Further, Hancock's arguments on appeal are merely a request that this court reweigh the evidence of the benefit to the State and the victim's family as a result of Hancock's plea. Our standard of review prevents such a reweighing of the evidence; we find the trial court's ruling is supported by sufficient evidence. *Anglemyer*, 868 N.E.2d at 490. The trial court did not abuse its discretion here.

## II. Inappropriate Sentence

Hancock argues that his sixty-five-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Appellate courts may revise a sentence after careful review of the trial court's decision if they conclude that the sentence is inappropriate based on the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). Even if the trial court followed the appropriate procedure in arriving at its sentence, the appellate court still maintains a constitutional power to revise a sentence it finds inappropriate. *Hope v. State*, 834 N.E.2d 713, 718 (Ind. Ct. App. 2005). The defendant has the burden of persuading the appellate court that his sentence is inappropriate. *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008).

Regarding the character of the offender, we observe that Hancock killed his aunt, a woman he considered to be like a mother to him because he feared going to prison for stealing money from her in order to buy drugs. Tabor had provided Hancock and Brown with a place to live and with financial assistance for Brown's young baby. Although Hancock was nineteen years old at the time he committed the offense, he already had amassed a significant juvenile history and an adult criminal history. We find that this evidence is sufficient to support Hancock's sentence.

7

As for the nature of the offense, we find that the circumstances of this offense were extremely heinous. Hancock stabbed his aunt eighty times, and counted aloud as he inflicted the wounds. He left Tabor covered in a blanket in her home, where she was discovered nearly a week later by others. We conclude that Hancock has failed to sustain his burden of persuading us that his sentence is inappropriate.

Affirmed.

BARNES, J., and BRADFORD, J., concur.